IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1964 |
| | § | |
| JONATHAN CROSSWHITE and OPUS THREE INCORPORATED, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, American General Life Insurance Company ("American General"), filed this action alleging breach of contract and breach of fiduciary duty against defendants Jonathan Crosswhite and Opus Three Incorporated (Docket Entry No. 1). Pending before the court is Defendants' Motion to Dismiss (Docket Entry No. 6). The defendants have argued that this court lacks specific or general jurisdiction over them. Both parties have argued in the alternative that this court should transfer venue to the United States District Court for the District of Utah. For the reasons explained below, the court will grant the defendants' motion to transfer venue.

## I. Factual and Procedural Background

This action concerns a dispute over a commission that American General paid to Opus Three for a life insurance contract that Opus

Three executed as an agent for American General. American General is a life insurance company organized under Texas law, with its principal place of business in Texas.[1] American General is a wholly owned subsidiary of AGC Life Insurance Company, which is a wholly owned subsidiary of AIG Life Holdings (US), Inc., which is wholly owned by American International Group, Inc.[2] Jonathan Crosswhite is a resident of Utah and the president of Opus Three.[3] Opus Three is a Wyoming corporation with its principal place of business in Salt Lake City, Utah.[4] American General has alleged that Opus Three is the alter ego of Crosswhite.[5]

Crosswhite and American General executed an Agency Agreement on May 3, 2004, under which Crosswhite would sell American General's life insurance products.[6] Crosswhite later executed an Agency Agreement with American General on behalf of Opus Three.[7] The Opus Three agreement produced by American General does not

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1.

[2]Plaintiff American General Life Insurance Company's Corporate Disclosure Statement, Docket Entry No. 2, p. 1.

[3]Affidavit of Jonathan Crosswhite, Exhibit 1 to Defendants' Motion to Dismiss, Docket Entry No. 6, p. 1.

[4]Id.

[5]Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 19.

[6]Agency Agreement, Exhibit A-1 to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9.

[7]Agency Agreement, Exhibit A-2 to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9.

actually name Opus Three on the document or state a date of execution, but for the sake of this motion the court accepts the affidavit testimony of American General's Director of License and Commissions that this agreement is what she represents it to be.[8]

American General has made the following allegations concerning the events giving rise to this action:

> 8. Opus Three marketed American General Life Insurance to a customer named Brent D. Mann. This solicitation resulted in the issuance of American General Policy Number M70005093L on December 20, 2006. The policy insured the life of Mr. Mann for $17,000,000.00.
>
> 9. The Mann policy was terminated January 13, 2009. As a result of this termination and pursuant to the Agency Agreement, Opus Three is contractually obligated to repay American General 100% of the commissions American General paid it on the sale of the Mann policy. Despite American General's demands, Opus Three has refused to repay its commissions to American General in breach of its Agency Agreement. . . .[9]

American General has made the following allegations regarding the defendants' contacts with the state of Texas:

> 14. . . . During the relationship between Defendants and American General, Defendants availed themselves of the privilege of conducting activities within Texas, including: (1) proactively seeking a relationship with American General (a Houston, Texas corporation) and requesting an application for agency appointment from American General; (2) filling out the requested applications []; (3) entering into an agency relationship with American General []; (4) receiving and accepting payments from American General that were processed and drawn from a bank in Houston, Texas; and (5) sending certain information related to the underlying

[8]Affidavit of Pauline Baker, Exhibit A to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 5.

[9]Plaintiff's Original Complaint, Docket Entry No. 1, ¶¶ 8-9.

> Policy to American General to be processed in Houston, Texas.[10]

American General has also alleged that "the contract between American General and Defendants specifically provided that should an insurance policy be surrendered, Defendants would refund the commissions they received from the sale of the policy to American General in Houston, Texas."[11] The contractual provision cited by American General in support of this assertion does not specify a location for payment, however.[12] In addition, American General has provided affidavit testimony that "Crosswhite has been a licensed insurance agent in the State of Texas since at least 2008 and he is currently actively licensed to sell insurance products throughout the State of Texas for three different insurance companies."[13]

Crosswhite has provided affidavit testimony concerning the insurance policy at issue in this action:

> The insurance policy made the basis of Plaintiff's claim was sold to Brent D. Mann who resided in Woodinville, Washington 98077. In conjunction with the sale of the policy, all activities took part in either the State of

---

[10]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 14 (internal citations omitted). The court notes that American General has not presented any affidavit or documentary evidence in support of its fifth point.

[11]Id. ¶ 13.

[12]Agency Agreement, Exhibit A-1 to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, § V.F. The Agency Agreement in Exhibit A-2 contains an identical clause.

[13]Affidavit of David T. McDowell, Exhibit B to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 4.

> Washington or the State of Utah. The contract Opus Three, Inc. had with Plaintiff was performed by Opus Three, Inc. outside of the State of Texas. When sales were made, commission checks to Opus Three, Inc. came from offices of the Plaintiff located outside the State of Texas. There was never an agreement between Opus Three, Inc., myself, and Plaintiff that any suits brought by Plaintiff could be brought in the State of Texas.[14]

Regarding Opus Three's contacts with the state of Texas, Crosswhite makes the following statements:

> Neither myself nor Opus Three, Inc. have an office in the State of Texas, nor do we solicit business in the State of Texas. Opus Three, Inc. does not transact business in the State of Texas and has never been qualified to do business in Texas. To the best of my knowledge, no policies of insurance issued by Plaintiff to a Texas resident have been sold by Opus Three, Inc. since at least 2005.[15]

Crosswhite states that American General terminated Opus Three's agency agreement in November of 2007 and that there have been no business dealings between the two since that time.[16] Crosswhite further states that American General filed a lawsuit against him and Opus Three in Utah state court on June 6, 2008.[17]

American General initiated this action on June 24, 2009, alleging diversity jurisdiction (Docket Entry No. 1). On July 29, 2009, the defendants filed their Motion to Dismiss (Docket Entry No. 6).

---

[14]Affidavit of Jonathan Crosswhite, Exhibit 1 to Defendants' Motion to Dismiss, Docket Entry No. 6, p. 1.

[15]Id.

[16]Id.

[17]Id. at 1-2.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

The defendants argue that this action should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). American General responds that the defendants' contacts with Texas were sufficient to support the court's assertion of personal jurisdiction over them.

### A. Standard of Review

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S.Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S.Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165

(5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve any factual conflicts in favor of the plaintiff. "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e c]ourt." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001).

**B. Applicable Law**

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S.Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S.Ct. 339, 343 (1940)). Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable; and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174,

2185 (1985). Federal courts "sitting in diversity may assert personal jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008).

1. Texas Long-Arm Statute

Texas courts may assert personal jurisdiction "over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees." See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007) (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from the nonresident's business in this state." Tex. Civ. Prac. & Rem. Code § 17.043. The statute provides, in part:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state. Id. at § 17.042.

The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will

allow.'" Moki Mac, 221 S.W.3d at 575 (quoting Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)).

2. Minimum Contacts Analysis

"There are two types of 'minimum contacts:' those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the defendant's contact with the forum state. ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 591 (5th Cir. 2003). General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. Johnston, 523 F.3d at 609 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. 1868, 1872-74 (1984)).

(a) Specific Jurisdiction

Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King, 105 S.Ct. at 2185. The Texas Supreme Court has recently explained that there are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or

a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. Moki Mac, 221 S.W.3d at 575 (citing Burger King, 105 S.Ct. at 2182).

Merely contracting with a resident of the forum state is not sufficient in itself to support the exercise of jurisdiction over the defendant. See ICEE Distributors, 325 F.3d at 591. The Fifth Circuit has looked to other factors surrounding the contract and its formation including, primarily, the place of performance and/or intended performance, and the place of subsequent breach. See Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1068 (5th Cir. 1992) ("In contract cases, this Court has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts."); Enviro Petroleum, Inc. v. Kondur Petroleum, 79 F.Supp.2d 720, 724 (S.D. Tex. 1999) (quoting Barnstone v. Congregation Am Echad, 574 F.2d 286, 288 (5th Cir. 1978) ("[I]t is the place of performance rather than execution, consummation or delivery which should govern the determination of [personal] jurisdiction.")). The Fifth Circuit

has made clear that engaging in activities related to the contract but which do not encompass performance of the contact are insufficient to constitute minimum contacts:

> [T]he combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant. Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 344 (5th Cir. 2004).

A plaintiff, therefore, must allege performance in the forum beyond mere communications and mailing of payments in order to establish minimum contacts.

(b) General Jurisdiction

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. Johnston, 523 F.3d at 609. "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" Id. (quoting Submersible Systems, Inc. v. Perforadora Central, S.A., 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction." Id. (quoting Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002)).

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years,

up to the date the suit was filed." Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999), cert. denied, 121 S.Ct. at 275, 292 (2000). "The determination of what period is reasonable in the context of each case should be left to the court's discretion." Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 570 (2d Cir.), cert. denied, 117 S.Ct. 508 (1996). The court views all the defendant's contacts in toto. Access Telecom, 197 F.3 at 717. "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston, 523 F.3d at 610 (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

Courts draw a distinction between doing business in a state and doing business with a state. See Helicopteros, 466 U.S. at 418, 104 S.Ct. 1868 (finding no general jurisdiction in Texas over a helicopter transportation company even though it purchased 80 percent of its helicopters, spare parts, and accessories from Texas sources over a four-year period). This distinction means that even if a party does substantial business with a company based in a given state, it is not subject to jurisdiction within that state unless it performs a significant part of its own business in that state. See Central Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003) (finding no general jurisdiction even though the defendant routinely arranged and received shipments to and from Texas and regularly sent sales people to Texas to develop

business, negotiate contracts, and service national accounts). The Fifth Circuit has stated that in order to be subject to general jurisdiction a defendant must have a business presence in Texas. Access Telecom, 197 F.3d at 717.

**C. Analysis**

American General alleges that the defendants are subject to both specific and general personal jurisdiction in Texas. For this action to proceed, American General must present evidence establishing a prima facie case that personal jurisdiction is proper. Quick Technologies, 313 F.3d at 343. For the reasons explained below, the court concludes that American General has failed to present sufficient evidence to support either specific or general personal jurisdiction.

1. Specific Jurisdiction

This court may exercise specific personal jurisdiction over the defendants if the lawsuit arises from the defendants' contacts with the forum state, and if American General establishes that the defendants purposefully availed themselves of the privilege of conducting business in Texas. See ICEE Distributors, 325 F.3d at 591-592. This lawsuit arises from a dispute over a commission paid for a life insurance contract negotiated between a Wyoming corporation based in Utah and a resident of the state of Washington. American General does not dispute that the dealings between Crosswhite, Opus Three, and the purchaser of the insurance

contract in question occurred entirely outside the state of Texas. American General argues, however, that specific jurisdiction arises in this instance because of the defendants' agency relationship with American General, which required contacts with a Texas party. Specifically, American General argues:

> During the relationship between Defendants and American General, Defendants availed themselves of the privilege of conducting activities within Texas, including: (1) proactively seeking a relationship with American General (a Houston, Texas corporation) and requesting an application for agency appointment from American General; (2) filling out the requested applications; (3) entering into an agency relationship with American General; (4) receiving and accepting payments from American General that were processed and drawn from a bank in Houston, Texas; and (5) sending certain information related to the underlying Policy to American General to be processed in Houston, Texas.[18]

American General also argues that specific jurisdiction is justified by the clause in the agency agreement that required the agent to surrender commissions in the event of a terminated policy.[19]

While American General's allegations involve contracting, communicating, and exchanging payments with a Texas party, they notably fail to establish that the contract required the defendants to perform any part of their contractual obligations in Texas. The Fifth Circuit has made clear that merely contracting with a resident of a forum state is insufficient to support the exercise

[18] Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 14 (internal citations omitted).

[19] Id. ¶ 13.

of personal jurisdiction. ICEE Distributors, 325 F.3d at 591. Likewise, activities incident to the contract, such as mailing payments to the forum state and engaging in communications related to the contract, are insufficient to constitute minimum contacts in the absence of performance by the defendant within the state. See Freudensprung, 379 F.3d at 344. The contacts alleged by American General, which involve only communications and payments, are therefore insufficient to support personal jurisdiction under Fifth Circuit precedent. The court notes that the fifth type of contact alleged by American General, concerning the processing of paperwork for the insurance contract in issue, is unsupported by any affidavit or documentary evidence, and in any event would be insufficient because it entails performance in Texas by American General rather than by the defendants.

Because the defendants' contacts with Texas are not sufficient to constitute purposeful availment under Fifth Circuit precedent, the court concludes that American General has failed to make a prima facie case that the defendants are subject to specific personal jurisdiction in Texas.

2. General Jurisdiction

In order for this court to exercise general personal jurisdiction over the defendants, American General must establish that the defendants' contacts with Texas are substantial, continuous, and systematic. See Johnston, 523 F.3d at 609. In

addition to the contacts described above in the discussion of specific jurisdiction, American General states that "Crosswhite has been a licensed insurance agent in the State of Texas since at least 2008 and he is currently actively licensed to sell insurance products throughout the State of Texas for three different insurance companies."[20]

While American General has established that an agency relationship existed between the defendants and American General, it has presented no evidence that the defendants have ever had insurance clients in Texas. Furthermore, American General has presented no evidence that the defendants have sought such clients in Texas. There is no evidence in the record that Crosswhite has ever even been to Texas. Given that the Supreme Court and the Fifth Circuit failed to find general jurisdiction in cases such as Helicopteros and Central Freight Lines, in which the defendants had engaged in far more contact with the state of Texas than American General has established for the defendants in this action, the court concludes that the contacts alleged by American General are not sufficiently substantial, continuous, and systematic to justify general jurisdiction.

The one piece of evidence that arguably supports American General's argument is Crosswhite's maintenance of a license to sell insurance in Texas. While possession of a state business license

[20]Affidavit of David T. McDowell, Exhibit B to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 4.

is a factor a court may consider in ascertaining purposeful availment, even the unpublished opinion cited by American General found that in the absence of substantial and systematic business in the forum state a license does not in itself justify general jurisdiction. See British Aviation Ins. Group v. American Eurocopter Corp., 1997 WL 118425, *4-5 (N.D. Tex. 1997). In that case the court found no general jurisdiction where the defendant had been to Texas on occasional business trips and maintained a Texas insurance license in order to service existing Texas customers. Id. That case does not support the existence of general jurisdiction in this action, in which the defendants have engaged in even less contact with Texas than did the defendant in British Aviation. While American General has established that Crosswhite possesses a Texas insurance license, it has not established that Crosswhite has used that license to conduct any business in Texas.

Since American General has failed to establish that the defendants' contacts with Texas are substantial, continuous, and systematic, the court concludes that American General has failed to present a prima facie case for general personal jurisdiction.

**D. Conclusion**

American General has failed to present a prima facie case that the defendants are subject to either specific or general personal jurisdiction in Texas. Because the defendants lack minimum

contacts with Texas, the court need not determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 329 n.20 (5th Cir. 1996) ("Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice.").

## III. Motion to Transfer Venue

The defendants have argued in the alternative that if this court does not dismiss this action, it should transfer the action to the United States District Court for the District of Utah.[21] American General has likewise moved in the alternative that if this court lacks personal jurisdiction over the defendants it should transfer venue to the United States District Court for the District of Utah.[22] While the defendants have only offered a perfunctory argument in favor of transfer, and American General has actually argued against transfer, the court concludes that in this instance a transfer of venue would be in the interest of justice. 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or

[21]Defendants' Motion to Dismiss, Docket Entry No. 6, ¶ 16.

[22]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, ¶ 40 (Prayer).

district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Since Crosswhite is a Utah resident and Utah is Opus Three's principal place of business, the court concludes that this action could have been brought in Utah. The court further concludes that transferring this action to the District Court in Utah would further judicial economy, and thereby serve the interest of justice. For these reasons, the court will grant the defendants' motion to transfer.

## IV. Conclusions and Order

For the reasons explained above, the court concludes that it lacks personal jurisdiction over defendants Crosswhite and Opus Three. The court further concludes that it would serve the interest of justice to transfer this action to the United States District Court for the District of Utah. Therefore, Defendants' Motion to Dismiss (Docket Entry No. 6) is **DENIED in part** and **GRANTED in part**. The Clerk is **ORDERED** to **TRANSFER** this action to the United States District Court for the District of Utah.

**SIGNED** at Houston, Texas, on this 5th day of November, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE